1  | Douglas Caiafa, Esq. (SBN 107747)
2  | DOUGLAS CAIAFA, A Professional Law Corporation
   | 11845 West Olympic Boulevard, Suite 1245
3  | Los Angeles, California 90064
   | (310) 444-5240 - phone; (310) 312-8260 - fax
4  | Email: dcaiafa@caiafalaw.com

5  | Christopher J. Morosoff, Esq. (SBN 200465)
   | LAW OFFICE OF CHRISTOPHER J. MOROSOFF
6  | 77-760 Country Club Drive, Suite G
   | Palm Desert, California 92211
7  | (760) 469-5986 - phone; (760) 345-1581 - fax
   | Email: cjmorosoff@morosofflaw.com

8  | Attorneys for Plaintiffs JAMES HOROSNY, et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| JAMES HOROSNY, et al., | Case No. 2:15-cv-05005-SJO-MRWx |
|---|---|
| Plaintiff, | **CLASS ACTION** |
| vs. | **PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS; COSTS OF ADMINISTRATION; AND REPRESENTATIVE ENHANCEMENT PAYMENTS; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| BURLINGTON COAT FACTORY OF CALIFORNIA, LLC, et al., | |
| Defendants. | |
| | Courtroom: 10C-10th Floor |
| | (1st Street Courthouse) |
| | Date:      July 24, 2017 |
| | Time:      10:00 a.m. |
| | Judge:     Hon. S. James Otero |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..................... 2

III.  THE SETTTLEMENT .............................................................. 4

A.    Settlement Negotiations .............................................................. 4

B.    Terms of the Settlement .............................................................. 5

    1.    Monetary Relief .................................................................. 5

    2.    Non-Monetary Relief ......................................................... 6

IV.  ARGUMENT .............................................................................. 6

A.    The Court Should Approve the Fee Application ......................... 6

    1.  The Percentage-of-the-Recovery Method is the Appropriate Basis for Determining Attorneys' Fees for the Settlement ................... 7

    2.  The Amount Requested is Reasonable ...................................... 8

        a.    Results Achieved ............................................................. 10

        b.    Quality of Work Performed ............................................. 12

        c.    Skill Required ................................................................. 11

        d.    Risks of Litigation .......................................................... 13

        e.    Contingent Nature of the Fee .......................................... 13

    3.    A Lodestar Cross-Check Supports the Reasonableness of the Requested Award .......................................................... 14

        a.    The Hours Incurred and Tasks Performed Were Reasonable and Necessary ...................................... 15

        b.    Counsel's Hourly Rates Are Reasonable .......................... 16

B.    The Court Should Award the Requested Litigation Costs ......... 16

C.    The Court Should Approve the Proposed Enhancement Payments ............... 17

IV.  CONCLUSION ........................................................................... 19

i

# TABLE OF AUTHORITIES

**Page Nos.**

**FEDERAL CASES**

*21st Century Ins. Co. v. Superior Court*
     47 Cal. 4th 511, 520 (2009) ........................................................ 8

*Boeing Co. v. Van Gemert,*
     444 U.S. 472 (1980) .............................................................. 7

*Chalmers v. City of Los Angeles,*
     796 F.2d 1205, 1210-11 (9th Cir. 1986) ........................................ 16

*Chavez v. Netflix, Inc.,*
     162 Cal. App. 4th 43 (2008) ..................................................... 8

*Chowning, et al. v. Kohl's Department Stores, Inc., et al.*
     (S.D.Cal.) 3:15-cv-01624-JAH-WVGx........................................ 13

*Children's Hosp. & Med. Ctr. v. Bunt,*
     97 Cal. App. 4th 740, 783 (2002). ............................................ 16

*Craft v. County of San Bernardino*
     624 F. Supp. 2d 1113 (C.D. Cal. 2008) ....................................... 14

*Fischer v. SJB-P.D. Inc.,*
     214 F.3d 1115 (9th Cir. 2000). ................................................ 15

*Hanlon v. Chrysler Corp.,*
     150 F.3d 1011 (9th Cir. 1998)............................................. 8, 17

*Harris v. Marhoefer,*
     24 F.3d 16 (9th Cir. 1994) ...................................................... 17

*Hensley v. Eckerhart,*
     461 U.S. 424 (1983). ........................................................... 15

*Hinojos, et al. v. Kohl's Corporation, et al.*
     (C.D.Cal.) 2:10-cv-07590-ODW-AGRx ...................................... 11

*In re Bluetooth Headset Prod. Liability Litig.*

    654 F.3d 935, 942 (9th Cir. 2011) ............................................... 7, 14

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod's Liab. Litig.*

    55 F.3d 768 (3d Cir. 1995) ....................................................... 10

*In re Lorazepam & Chlorazepate Antitrust Litig.,*

    205 F.R.D. 369 (D.D.C. 2002) ................................................... 18

*In re Media Vision Tech. Sec. Litig.,*

    913 F. Supp. 1362 (N.D. Cal. 1996) .......................................... 17

*In re Mego Fin. Corp. Sec. Litig.,*

    213 F.3d 454 (9th Cir. 2000) .................................................... 18

*In re Omnivision Techs, Inc.,*

    559 F. Supp. 2d 1036 (N.D. Cal. 2008). ............................... 16, 18

*In re Online DVD-Rental Antitrust Litig.*

    779 F.3d 934 (9th Cir. 2015) ............................................... passim

*In re Pacific Enter. Sec. Litig.*

    47 F.3d 373, 379 (9th Cir. 1995) ............................................ 9, 13

*In re Rite Aid Corp. Sec. Litig.,*

    146 F. Supp. 2d 706 (E.D. Pa. 2001) ....................................... 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*

    Case No. M 07-1827 SI, 2013 WL 1365900, at \*17

    (N.D. Cal. April 3, 2013) ........................................................ 18

*In re Washington Public Power Supply Sys. Sec. Litig. ("In re WPPSS")*

    19 F.3d 1291 (9th Cir. 1994) .................................................. 8, 13

*Kearney v. Hyundai Motor Am.,*

    2013 WL 3287996, at \*8 (C.D. Cal. June 28, 2013) ................... 16

Laffitte v. Robert Half International, Inc.

(2016) 1 Cal.5th 480 ................................................................. 9

Leonard v. Baumer (In re United Energy Corp. Sec. Litig.),

1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989). ....................... 17

Linney v. Cellular Alaska Partnership

151 F.3d 1234, 1242 (9th Cir. 1998) ...................................... 10

Mangold v. Cal. Public Util. Comm'n,

67 F.3d 1470 (9th Cir. 1995) ................................................. 8

Mills v. Electric Auto-Lite Co.,

396 U.S. 375 (1970) ............................................................. 17

Nguyen v. Radient Pharm. Corp.,

2014 WL 1802293, at *11 (C.D. Cal. May 6, 2014) ................... 16

Radcliffe v. Experian Info. Solutions, Inc.,

715 F.3d 1157 (9th Cir. 2013) ............................................... 20

Rebney v. Wells Fargo Bank

220 Cal. App. 3d 1117 (1990) ............................................... 10

Russell v. Kohl's Department Stores, Inc.,

U.S.D.C. Case No. 5:15-cv-01143-RSK-SP. ............................ 9

Staton v. Boeing Co,

327 F.3d at 938 ............................................................. 7, 11

Stokus v. Mars,

217 Cal. App. 3d 647 (1990) ............................................... 15

Vizcaino v. U.S. Dist. Court for Western Dist. Of Washington,

173 F.3d 713 (9th Cir. 1999) .......................................passim

Vo v. Las Virgenes Mun. Water Dist.,

79 Cal. App. 4th 440 (2000). .............................................. 15

MOTION FOR ATTORNEYS' FEES AND COSTS

*Webb v. Bd. of Educ.,*
     471 U.S. 234 (1985) ................................................................... 14

*Wershba v. Apple Computer, Inc.*
     91 Cal. App. 4th 224 (2001) ........................................................10,15

**STATUTES AND RULES**

Cal. Bus. & Prof. Code §17200 ....................................................... passim

Cal. Bus. & Prof. Code §17500 ....................................................... passim

Cal. Civ. Code §1750 ..............................................................................3

Fed. R. Civ. Proc. 23 ...................................................................... passim

MOTION FOR ATTORNEYS' FEES AND COSTS

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **INTRODUCTION**:

On January 26, 2017, this Court granted Preliminary Approval of the Class Action Settlement and certified a Settlement Class of approximately 3.7 million customers of Defendant Burlington Coat Factory based upon the terms of the Amended Settlement Agreement ("ASA") in this case, agreed to by the Parties and filed with the Court (a true and correct copy of which is attached as Exhibit "A" to the Declaration of Douglas Caiafa filed concurrently herewith).

The Settlement is the product of many months of arms-length negotiations between the parties, including mediation with Jeffrey Krivis, a highly-experienced mediator. Defendant has agreed to pay up to twenty-nine million, eight-hundred-twenty-four thousand, five hundred dollars ($29,824,500) in Merchandise Certificates, administrative costs, attorneys' fees and expenses, and incentive awards.  This amount includes $27,750,000 in Merchandise Certificates which have been distributed to Class Members for use either in one of Defendant's stores in California or online.  (Exh. A, §III(C)).  In the alternative, Class Members may, at their election, redeem their Merchandise Certificates for $5.00 in cash, either at any Burlington store in California or by mail (Id., §III(D)).

The Settlement also requires Defendant to pay up to $1,137,000 for costs of notice to the Class and administration of the Settlement (Id. §III(R)), and, subject to Court approval, up to $927,500 for reasonable attorneys' fees and litigation costs, and up to $10,000 for Class representative enhancement payments (not to exceed $5,000 each). (Id. §I(R), §III(G)).

The Merchandise Certificates have been distributed directly to Known Class Members (those Class Members for whom the parties have contact information, and who comprise over 95% of the Class) along with notice of the Settlement without the need for any such person to have submitted a claim, and to those Unknown Class Members (those

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   Class Members for whom Defendant does not have contact information) who submit a

2   valid claim within the claim period.

3           In addition, and as a direct result of this litigation, Defendant has agreed to disclose

4   its pricing practices in its California stores and on its website, has agreed to train its Buyers

5   for its California locations about its pricing practices, and has agreed to audit those

6   practices in California. (Id. §§H-L.).

7           Plaintiffs' request is supported by well-established Ninth Circuit precedent

8   analyzing the percentage-of-the-fund method for diversity actions.  The proposed fee

9   award recognizes Class Counsel's hard work, efficiency and success throughout this

10  litigation, resulting in the recovery of $27,750,000 for the Settlement Class. The

11  Settlement provides real, immediate, and substantial relief for participating

12  Settlement Class Members who, but for this Litigation, would have received nothing.

13  The requested fees and costs are fair and reasonable based on the complexity, risk

14  and result obtained. The proposed Enhancement Payments of $5,000 to each of the

15  two class representatives is also appropriate, and represents less than 1/10[th] of 1% of

16  the Class Settlement Amount, and is lower than awards that have been approved in

17  similar cases in the Ninth Circuit.

18      **II.    FACTUAL AND PROCEDURAL BACKGROUND**:

19          Prior to filing this action on July 1, 2015, Plaintiffs' counsel consulted with

20  Plaintiffs, investigated Defendant's pricing practices and researched the law applicable to

21  Plaintiffs' claims. (Caiafa Dec. at ¶7).  In the operative Second Amended Complaint

22  ("SAC") filed on February 26, 2016 (ECF #44), Plaintiffs allege that throughout the Class

23  Period, Defendant has engaged in a deceptive advertising scheme by which it advertised

24  "sale" prices that were substantially lower than advertised "Compare" prices for the

25  products sold in its California Burlington stores.  Plaintiffs further allege that the higher

26  Compare prices were deceptive because the Compare prices were not based on actual

27  prices that identical items sold for either at Burlington or other retailers, and that

28

Defendant failed to adequately disclose to consumers what its Compare reference prices were intended to represent. The SAC seeks restitution and injunctive relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.* ("CLRA"). Defendant denies any wrongdoing in this case, denies Plaintiffs' allegations, and further denies Plaintiffs' assertion that the retailer's pricing practices constituted violation of California law and/or Federal Trade Commission guidelines.

Throughout this Litigation, Plaintiffs' counsel engaged in extensive legal research and analysis and conducted informal discovery. (Caiafa Dec. at ¶9). Plaintiffs' counsel received, reviewed and analyzed numerous documents that Defendant produced in the Litigation, including its voluminous and detailed sales data. (Id.). Plaintiffs' counsel also continuously monitored and reviewed Defendant's public filings, including its 10-Ks and annual reports, keeping a close eye on Defendant's financial status and pricing practices. (Id.).

On October 1, 2015, Defendant filed a Motion to Dismiss the First Amended Complaint, along with accompanying declarations, request for judicial notice and supporting documents (ECF #s16-18). On October 12, 2015, Plaintiffs filed their Opposition to Defendant's Motion to Dismiss along with a Request for Judicial Notice (ECF #s 21 & 22). On October 19, 2015, Defendant filed its Reply in Support of Motion to Dismiss (ECF #27), and on October 26, 2015, the Court denied Defendant's Motion to Dismiss the FAC and ordered Defendant to file an Answer (ECF #30), which it did on November 5, 2015 (ECF #32).

During this same time-period, on October 14, 2015, Plaintiffs filed a Motion for Class Certification (ECF #24), which was subsequently taken off calendar to allow for further discovery and briefing. (ECF No. 34). Plaintiffs' Complaint sought certification

MOTION FOR ATTORNEYS' FEES AND COSTS

of the following Class, which includes approximately 3.7 million individuals, under Fed. R. Civ. Proc. 23(b)(2) and/or (b)(3):

> All persons who, while in the State of California, and between July 1, 2011, and the present (the "Class Period"), purchased from Burlington Coat Factory one or more items at any Burlington Coat Factory store in the State of California with a price tag that contained a "Compare" price which was higher than the price listed as the Burlington sale price on the price tag, and who have not received a refund or credit for their purchase(s). Excluded from the Class are Defendants, as well as Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of any Defendant.

Soon thereafter the Parties agreed and the Court approved a Stipulation to reschedule the Motion for Class Certification and to set a new briefing schedule to be determined at the December 14, 2015 Scheduling Conference (ECF#36.). It was during and after this period that counsel began substantive discussions regarding a potential resolution of the action on a class-wide basis.

## III.   THE SETTLEMENT:

The Settlement here is primarily a direct distribution settlement. The overwhelming majority of the Settlement Amount has been directly distributed to Known Class Members without the need for any such Class Member to make a claim. Unknown Class Members may also obtain relief via a claim process.

### A.   Settlement Negotiations:

Throughout the winter of 2015-2016, the parties engaged in extensive negotiations concerning the possible structure of a class-wide settlement. (Caiafa Dec. at ¶15). These negotiations led to mediation, on February 10, 2016, with Jeffrey Krivis of First Mediation Corporation. (Id.). At the conclusion of a full day of mediation, the parties reached a tentative agreement with respect to most of the material terms of the Settlement as reflected in the Agreement. (Id.) The parties remained at an impasse with respect to certain terms. Further conferences and negotiations were required before final agreement was reached on all terms. The parties subsequently negotiated, drafted and executed a

-4-

1    comprehensive Agreement that was presented to the Court as Exhibit A to the Declaration

2    of Christopher J. Morosoff in Plaintiffs' original MPA. (Caiafa Dec. at ¶17).

3         On May 9, 2016, Plaintiffs filed an Unopposed Motion for Preliminary Approval of

4    Class Action Settlement and Motion for Certification of Settlement Class ("MPA"). (ECF

5    #52). On June 9, 2016, the Court denied Plaintiffs' MPA with leave to file a new motion

6    ("Order"). (ECF #53). In its June 9, 2016, Order, the Court instructed Plaintiffs to address

7    many enumerated issues in any renewed motion for approval of the proposed Settlement.

8    Shortly thereafter, the Parties began a new series of negotiations to address the concerns of

9    the Court and eventually agreed upon, drafted and executed a comprehensive Amended

10   Settlement Agreement which is presently before the Court. (Exh. A to Caiafa Dec.).

11   **B.    <u>Terms of the Settlement</u>:**

12        The Agreement is intended to resolve the Litigation in its entirety, and is

13   conditioned on the Court certifying a Settlement Class, for settlement purposes only, and

14   granting final approval of the Settlement. (Ex. A at ¶III.N).

15        **1.    Monetary Relief:**

16        Defendant has agreed to pay up to twenty-nine million, eight-hundred-twenty-four

17   thousand, five hundred dollars ($29,824,500) in Merchandise Certificates, administrative

18   costs, attorneys' fees and expenses, and incentive awards. This amount includes

19   $27,750,000 in Merchandise Certificates to be distributed directly to Class Members for

20   use either in one of Defendant's stores in California or online. (Exh. A, §III.C.) *In the*

21   *alternative, Class Members may, at their election, redeem their Merchandise Certificates*

22   *for $5.00, either at any Burlington store in California or by mail (Id., §III.D.)*

23        The Settlement Class consists of approximately 3.7 million individuals.

24   Merchandise Certificates have been distributed directly to Known Class Members. (Ex. A

25   at ¶III.C-E; N.2 & N.3). Of the 3.7 million Class Members, 3.55 million (or 96%) are

26   Known Class Members and have received Merchandise Certificates without the need to

27   submit a claim. Defendant will also distribute Merchandise Certificates to Unknown

28

Class Members who submit a claim. (Id. at ¶¶III.D and N.3). There are approximately 145,000 Unknown Class Members, who make up only 4% of the Class. Defendant will also pay up to $1,137,000 to be used for Notice and Administration Costs (Id. at ¶III.G), and, subject to approval by the Court, up to $927,500 for reasonable attorneys' fees and costs (Id. at ¶III.F.2), and up to $10,000 for Class Representative Payments ($5,000 for each Representative). (Id. at ¶III.F.1).

The Merchandise Certificates have no expiration date and may be used toward the purchase of any item at any Burlington store in California. (Ex. A, ¶III.C). Known Class Members have received their Merchandise Certificate directly along with the Notice to the Class, without the need to submit a claim. Unknown Class Members (the remaining 4%) have ninety (90) days from the date of Notice to submit a Claim Form via mail to the Administrator, to receive their Merchandise Certificates. (Ex. A at ¶III.C, D, and N.5).

### 2.   Non-Monetary Relief

The ASA provides for non-monetary relief requiring Defendant to change its advertising practices. Specifically, the ASA, at sections H-L, requires Defendant to provide disclosures regarding its "Compare At" pricing where it previously had not, and requires training sessions, and auditing of its pricing practices (as more fully described below). (See, ASA, Sections H-L).

## III.   ARGUMENT:

### A.   The Court Should Approve the Fee Application:

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties['] agreement." Fed. R. Civ. Proc. 23(h).

Here, Defendant has agreed not to oppose Plaintiff's request for Attorneys' Fees and Costs in the amount of $927,500, which constitutes less than 4% of the Class Settlement Amount of $27,750,000 (far less than the standard benchmark percentage of 25%). The amount requested is clearly disclosed in the Class Notice,

-6-

as required by Federal Rule 23(h)(1). (Ex. A, at Exhibits A, B (p.7); C (p.2), E(p.2), & F(p.2)). The agreed-upon fees are, like all aspects of the Settlement, subject to the Court's determination of whether the agreement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

**1. The Percentage-of-the-Recovery Method is the Appropriate Basis for Determining Attorneys' Fees for the Settlement**:

The U.S. Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund ... is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Staton v. Boeing Co*, 327 F.3d 938, 967. Here, the attorneys' fees award should be based on a percentage of the Class Settlement Amount since the ASA provides for direct distribution of $27,750,000 in Merchandise Certificates to be paid to the Settlement Class, net of attorneys' fees, costs and representative enhancements. The requested amount represents less than 3.5% of the Settlement Amount. Alternatively, if each and every Class Member were to choose the $5.00 cash option, the amount of distribution to the Class would decrease from $27,750,000 in Merchandise Certificates to $18,500,000 in cash. Based on such cash value of the fund, an award of attorneys' fees and costs of $927,500 would represent approximately 5% of that amount. Either figure is far below the standard 25% benchmark used in this Circuit.

"Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 952 (9th Cir. 2015) (approving attorneys' fee award based on percentage of total settlement fund involving cash and gift cards). While Courts have discretion to utilize either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees, the better exercise of discretion

here would be to utilize the percentage method because the non-reversionary common fund makes settlement valuation and application of the percentage method a more straight-forward undertaking. (*In re Washington Public Power Supply Sys. Sec. Litig.* ("*In re WPPSS*"), 19 F.3d 1291, 1295 (9th Cir. 1994). (*In re Bluetooth*, 654 F.3d at 942 ("[T]he benefit to the class is easily quantified in common-fund settlements . . . ."). Here, and since the settlement is non-reversionary, and has a readily determinable value, the percentage-of-the-fund method is the most appropriate basis for awarding attorneys' fees.

## 2.   **The Amount Requested is Reasonable**:

Under the percentage-of-the-fund method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." *Id.* In diversity actions, courts apply state law to determine the right to fees and the method for calculating fees. *See Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees.").

California law is in accord with federal law on the issue of awarding attorneys' fees from a common fund. *See 21st Century Ins. Co. v. Superior Court*, 47 Cal. 4th 511, 520 (2009) ("when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff . . . for the benefit of all results in the creation . . . of a fund, such plaintiff . . . may be awarded attorney's fees out of the fund."). With respect to the reasonable amount to award from the fund, "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66, fn. 11 (2008). The Ninth Circuit has also

-8-

1   awards of more than 25% in common fund cases. *See, e.g., In re Pacific Enter. Sec.*
2   *Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33.3%); *Palmer v. Nigaglioni*, 508 Fed.
3   Appx. 658, 658 (9th Cir. 2013) (28%); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,
4   1048-50 (9th Cir. 2002) (28%).

5       The "common fund" doctrine "is grounded in `the historic power of equity to
6   permit the trustee of a fund or property, or a party preserving or recovering a fund for
7   the benefit of others in addition to himself, to recover his costs, including his
8   attorneys' fees, from the fund of property itself or directly from the other parties
9   enjoying the benefit.' [Citation.] [¶] First approved by [the California Supreme Court]
10  in the early case of *Fox v. Hale & Norcross S. M. Co.* (1895) 108 Cal. 475 [41 P.
11  328] ..., the `common fund' exception has since been applied by the courts of this
12  state in numerous cases. [Citations.]" *Serrano III*, 20 Cal.3d at 35.  The "common
13  fund" method of calculating attorneys' fees applies in class actions settlements or
14  other common fund cases, as well as other types of representative actions. *Laffitte*, 1
15  Cal.5th at 501; *Lealao*, 82 Cal.App.4th at 53.

16      Consistent with this precedent, the requested fee award of less than 4% of the
17  $27,750,000 common fund is reasonable, appropriate and justified under the
18  circumstances of this case. "When assessing whether the percentage requested is
19  reasonable, courts look to factors such as: (a) the results achieved; (b) the risk of
20  litigation; (c) the skill required; (d) the quality of work; (e) the contingent nature of
21  the fee and the financial burden; and (f) the awards made in similar cases." *Vasquez*,
22  266 F.R.D. at 492 (citing *Vizcaino*, 290 F.3d at 1047).

23      In fact, on October 4, 2016, counsel for Plaintiffs herein obtained final
24  approval in a similar false advertising case, were approved as class counsel and
25  awarded their full attorneys' fees by Judge R. Gary Klausner in *Russell v. Kohl's
26  Department Stores, Inc.*, U.S.D.C. Central District Case No. 5:15-cv-01143-RSK-SP.
27  (ECF#96).  Specifically, in a settlement which created a common fund of $6,150,000,

28
-9-
MOTION FOR ATTORNEYS' FEES AND COSTS

Judge Klausner awarded Mr. Caiafa and Mr. Morosoff 25% of the common fund amount. Further, the Court approved payment of litigations costs and administrative costs, as well as the payment of representative enhancements of $5,000.00 each to Plaintiffs Steven Russell and Donna Caffey. (Id.)

### a.   Results Achieved:

The results achieved here are exceptional. The Settlement provides that Defendant will pay up to twenty-nine million, eight-hundred, twenty-four thousand, five hundred dollars ($29,824,500) in Merchandise Certificates, administrative costs, attorneys' fees and expenses, and incentive awards. This amount includes $27,750,000 in Merchandise Certificates to be distributed directly to Class Members for use either in one of Defendant's stores in California or online. (Exh. A, §III.C.) In addition, Class Members may, at their election, redeem those Merchandise Certificates for $5.00 each, either at any Burlington store in California or by mail (Id., §III.D.)

In assessing the results achieved through a class action settlement, the trial court must "recognize that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and guard against demanding too large a settlement . . . ." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod's Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (quoting *Manual for Complex Litigation* 2d (1985) § 30.44)). Moreover, a settlement is not judged against what might have been recovered had the plaintiff prevailed at trial; nor does the settlement need to provide anywhere near 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 246 and 250 (2001); *Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1139 (1990).

Under similar circumstances, the Ninth Circuit has upheld awards in excess of its 25% benchmark. *See Vizcaino*, 290 F.3d at 1046-50 (affirming district court's award of 28% of a $96,885,000.00 class action settlement fund ($27,127,800.00) for

attorneys' fees, finding that class counsel had "pursued this case in the absence of supporting precedents" and in the face of other serious obstacles). As in *Vizcaino*, Class Counsel undertook this case without knowing whether the theories advanced would prove successful and without any controlling precedents.

Plaintiffs and their counsel have also obtained relief beyond the Monetary Component of the Settlement Amount as described in detail in the ASA, the Motion for Preliminary Approval, and herein.   Prior to the instant Settlement, Defendant had no disclosures of any kind regarding its "Compare At" advertising.   As a result of and as provided in the Settlement, Defendant has agreed, for as long as it utilizes "Compare At" Pricing, to comply with all relevant California and Federal laws impacting such advertising and has specifically agreed to: (1) Post in its California stores a notice, visible to its customers in each of its California locations, disclosures concerning its "Compare at" pricing practices; (2) Provide Customer Notice and Website Posting - where it will publish on its e-commerce website disclosures concerning its "Compare at" pricing practices; (3) Hold at least one training session for its existing Buyers for its California locations for purposes of reviewing Burlington Coat Factory's pricing policies and also train new Buyers for its California locations on its pricing practices; (4) Audit its pricing practices in California to ensure compliance with applicable California and/or Federal law; and, (5) audit and confirm that its retail stores in California and its website comply with the in-store signage and website posting required by the Settlement Agreement. (See, ASA, Sections H-L).

Such non-monetary relief is "a relevant circumstance in determining what percentage of the common fund Class Counsel should receive as attorneys' fees[.]" *Staton*, 327 F.3d at 974 (internal quotation marks omitted); *see also Vizcaino*, 290 F.3d at 1049 (upholding fee award where "counsel's performance generated benefits beyond the cash settlement fund").

-11-
MOTION FOR ATTORNEYS' FEES AND COSTS

**b.    Quality of Work Performed:**

Counsel for Plaintiffs are highly experienced attorneys in complex litigation and in the area of consumer class actions in particular, and believe that the quality of the legal work they have performed has been professional, competent and of the highest caliber and quality.  Moreover, the record in this action, including extensive and complex law and motion, supports this conclusion.

As stated above, and prior to filing this action, counsel investigated facts and law relevant to these claims and met with potential plaintiff customers of Defendant in an effort to fully evaluate the case from both a factual and legal standpoint. Counsel consulted scholarly articles in the area and spoke with experts in the field. Counsel also researched and analyzed other similar false advertising cases as well.

**c.    Skill Required:**

This is a complex and somewhat novel case which required considerable skill and effort of experienced counsel for the Class.  For example, issues relating to the proper measure of restitution in such a case, if any, are issues which will no doubt be the subject of many Ninth Circuit decisions to come.

Plaintiffs' counsel was also required to use their skill and expertise to evaluate the documentation and other evidence in this action and apply it to the many legal issues in this case.  Based on the record herein and the quality of the work produced by Plaintiffs' counsel, as well as the results achieved, it is clear that Plaintiffs' Counsel displayed considerable skill and expertise throughout this action.

Courts have recognized that the novelty and difficulty of issues in a case are significant factors to be considered in making a fee award. *See e.g.*, *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001) ("*Vizcaino I*").

The caliber of opposing counsel is another important factor in assessing the quality of Class Counsel's representation of the Settlement Class. *See e.g.*, *Vizcaino I*, *supra* at 1303. Here, Defense counsel was Munger Tolles & Olsen LLP as well as

-12-

Seyfarth Shaw LLP, both top-tier law firms specializing in complex litigation and class action. Plaintiffs' Counsel acquitted themselves well against these experienced and qualified defense attorneys, and achieved an excellent result at every stage of the action and ultimately by the establishment of the $27.5 million settlement fund.

**d.      Risks of Litigation:**

Risk is likewise an important factor in assessing the reasonableness of a class action settlement fee award. *See e.g., Vizcaino I*, 142 F. Supp. 2d at 1303-04. A high risk factor is one reason for increasing attorneys' fee awards above the 25% benchmark in common fund cases. *Id.*; *see also In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% of common fund as attorneys' fees was fair and reasonable because of the complexity of issues and risks of litigation). Here, Class Counsel have been faced many of these same challenges and risks, including the risk of achieving class certification, and the risk of recovering restitution.

**e.      Contingent Nature of the Fee:**

A fair fee award must include consideration of the contingent nature of the fee where there is no assurance of attorneys' fees or reimbursement of expenses. *See, e.g., Vizcaino*, 290 F.3d at 1049-50. Attorneys' fee awards must be sufficient to encourage skilled and determined counsel to take on difficult cases and see them through years of litigation to a fair and adequate resolution for the plaintiffs:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent bass are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re WPPSS*, 19 F.3d at 1299.

1    The commencement of a class action is far from a guarantee of success. Class
2    Counsel have received no compensation during what will be by the time of Final
3    Hearing, over 2 years of litigation (and for months of investigation prior to that), and
4    for thousands of dollars of out-of-pocket costs while litigating for the benefit of the
5    Class. Caiafa Decl. ¶21; Morosoff Decl. ¶¶19. Any fee award or reimbursement of
6    expenses has always been a substantial risk, and ultimately any award still is within
7    the Court's discretion. Here, despite the many risks faced, counsel committed their
8    financial and human resources to this case and achieved a successful result for the
9    substantial benefit of the Settlement Class.

10       **3.    A Lodestar Cross-Check Supports the Reasonableness of the**
11             **Requested Award**:

12    The Ninth Circuit does not require a lode-star analysis. *Craft v. County of San*
13    *Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is
14    not required in this circuit, and in some cases is not a useful reference point.").
15    However, even in common fund cases, a lodestar cross-check may help a court in
16    determining whether a proposed percentage award is reasonable. As the Ninth Circuit
17    has explained, "[c]alculation of the lodestar, which measures the lawyers' investment
18    of time in the litigation, provides a check on the reasonableness of the percentage
19    award." *Vizcaino*, 290 F.3d at 1050. Although "the primary basis of the fee award
20    remains the percentage method, the lodestar may provide a useful perspective on the
21    reasonableness of a given percentage award." *Id. See also In re Bluetooth*, 654 F.3d at
22    944. Here, counsel's $1,013,000 lodestar is supported by attorney declarations.
23    Compensable activities under the lodestar method include both pre-litigation
24    activities (*e.g.*, interviewing the client, investigating the facts, researching the law,
25    and preparing the initial pleading), and litigation activities (*e.g.*, discovery, conferring
26    with clients, drafting pleadings, making court appearances, travel time, mediation,
27    settlement negotiations, and drafting settlement documents). *Id.; See also Webb v. Bd.*

28

1  of Educ., 471 U.S. 234, 243 (1985); *Stokus v. Marsh*, 217 Cal. App. 3d 647, 655-56
2  (1990).

3       **a.**    **The Hours Incurred and Tasks Performed Were Reasonable and**
4            **Necessary:**

5      The first step in the lodestar analysis is to calculate the lodestar amount, which
6  is the number of hours reasonably performed at standard hourly rates. *Vo v. Las*
7  *Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440 (2000). It is well established that in
8  moving for fees, counsel is "not required to record in great detail how each minute of
9  his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).
10 Instead, counsel need only "identify the general subject matter of his time
11 expenditures." *Id.*; *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000).
12 The court can accept declarations of counsel setting forth the hours worked and tasks
13 performed. *Wershba*, 91 Cal. App. 4th at 254-55 (permitting fee awards in the
14 absence of detailed time sheets).

15     The accompanying declarations of counsel demonstrate that they have
16 collectively, to date, expended 1460 hours on this case and detail the type of work
17 that was done, including: (1) pre-litigation research and investigation; (2) litigation
18 activities such as drafting Plaintiff's complaints, extensive motion practice and
19 review and analysis of detailed documentation provided by Defendant and otherwise
20 discovered by Plaintiffs' counsel; (3) filing a motion for class certification prior to
21 settlement; (4) settlement negotiations and mediation, preparation for same, and
22 drafting, re-drafting and finalizing the terms of the Settlement Agreement and ASA
23 on several occasions; and (5) multiple efforts to obtain Court approval of the
24 Settlement. Defendant vigorously defended this action, and all of the tasks performed
25 by Class Counsel were reasonable and necessary to litigating the claims. Moreover,
26 counsel will continue to dedicate time throughout the final approval and claims
27 administration process.

28

-15-

b.    **Counsel's Hourly Rates Are Reasonable:**

The test for the reasonableness of an attorney's hourly rate is based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986); *Children's Hosp. & Med. Ctr. v. Bunt*, 97 Cal. App. 4th 740, 783 (2002). In performing this analysis, courts look to the experience and reputation of class counsel, the complexity of the issues involved, the geographic market in which the case is litigated, and other factors affecting the litigation.

In this case, attorney declarations describe the substantial experience each attorney and firm has in handling class actions, and they establish the basis and calculation for the hourly rates of the attorneys and paralegals at each firm who worked on this case. Caiafa Decl. ¶¶6 & 29; Morosoff Decl. ¶¶4 & 25.  Counsel billed this case at their usual and customary hourly billing rates, which have been approved as reasonable by other courts presiding over similar complex class action lawsuits, including cases resolved in the Central District of California. *Id. See also e.g. Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *11 (C.D. Cal. May 6, 2014) (approving partner rates of $750, associate rates ranging from $325 to $550, and paralegal rates ranging from $200 to $225); *Kearney v. Hyundai Motor Am.*, 2013 WL 3287996, at *8 (C.D. Cal. June 28, 2013) (approving rates ranging from $650 to $800 for attorneys).

B.    **The Court Should Award the Requested Litigation Costs:**

Here, the litigation costs are included in the $927,500 amount requested for attorneys' fees and costs. In addition to attorneys' fees, attorneys in a class action "may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008). *See also* Fed. R. Civ. P. 23(h) ("[i]n a certified class

MOTION FOR ATTORNEYS' FEES AND COSTS

1    action, the court may award...nontaxable costs that are authorized by law or by the

2    parties' agreement"); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970).

3         Here, counsel have incurred over $7,760 in litigation costs to date. Caiafa Decl.

4    ¶30. The most notable expenses were related to mediation, filing fees, photocopy and

5    postage, and research that were incurred in the normal course of business and were

6    reasonable and essential to the successful prosecution of this lawsuit. *Id. See In re*

7    *Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996) (costs

8    related to retention of experts, photocopy costs, travel expenses, postage, telephone

9    costs, computerized legal research fees, and filing fees may be reimbursed).

10        Reimbursement for these expenses from the common fund is appropriate, as all

11    beneficiaries should bear their fair share of the costs of the litigation, and these are

12    the normal costs of litigation for which counsel traditionally bill paying clients. *See,*

13    *e.g., Leonard v. Baumer (In re United Energy Corp. Sec. Litig.)*, 1989 WL 73211, at

14    *6 (C.D. Cal. Mar. 9, 1989).

15    **C.    <u>The Court Should Approve the Proposed Enhancement Payments</u>:**

16        Plaintiffs James Horosny and Jennifer Price request this Court grant

17    Enhancement Payments of $5,000 each. (Ex. A, ¶3.1.4). The requested Enhancement

18    Payment is warranted based upon Plaintiffs' effort to protect the interests of the

19    Class, the degree to which the Class has benefitted from those actions, and the

20    amount of time and effort Plaintiff expended in pursuing the action. (See

21    Declarations of Horosny and Price filed concurrently herewith). Both class

22    representatives were required to review and provide documents, prepare for their

23    noticed depositions, prepare declarations in support of Plaintiffs' motions, participate

24    in numerous conversations with counsel, be involved in discussions regarding

25    settlement and generally be available to fully participate every step of the way.

26    Additionally, over the past 20+ months Plaintiffs have been exposed to significant

27

28

-17-

1    personal and reputational scrutiny and risk from the publicity associated with this

2    class action lawsuit.

3         Courts routinely approve awards to class representatives for their service to the

4    class as part of their approval of settlements in class actions. *See e.g.*, *In re Mego Fin.*

5    *Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) ("[T]he district court did not

6    abuse its discretion . . . in awarding an incentive award to the Class Representatives")

7    *In re Lorazepam & Chlorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002)

8    ("Incentive awards are not uncommon in class action litigation and particularly where

9    a common fund has been created for the benefit of the entire class. In fact, courts

10   routinely approve incentive awards to compensate named plaintiffs for the services

11   they provided and the risks they incurred during the course of the class action

12   litigation".).  Here, Plaintiffs have worked with Class Counsel, for almost 2 years.

13   Both plaintiffs have provided valuable services on behalf of the class and have been

14   instrumental in bringing about the substantial benefits of the Settlement Agreement.

15   The proposed $5,000 Enhancement Payment to each Plaintiff represents and

16   infinitesimal fraction of one percent of the Class Settlement Amount, and is well

17   within the range of such awards approved as fair and reasonable by the Ninth Circuit

18   and elsewhere.  *See e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 941-

19   943 (approving trial court's award of $5,000 to each of the nine class representatives,

20   total $45,000); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. M 07-1827 SI,

21   2013 WL 1365900, at *17 (N.D. Cal. April 3, 2013) (approving incentive awards of

22   $15,000 to each of the 40 court-appointed class representatives).

23        Moreover, Plaintiffs' approval of the Settlement was not conditioned on their

24   receiving an incentive award, and their rights to an incentive award was not

25   conditioned upon their approval of the Settlement. (Horosny Decl. ¶10; Price Decl.

26   ¶10.  Accordingly, Plaintiffs' interests did not conflict with or diverge from the

27

28
                                         -18-

interests of the Settlement Class. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1161 (9th Cir. 2013).

## IV.   CONCLUSION:

For all the reasons set forth herein, Plaintiffs and Class Counsel respectfully request the Court approve the proposed award of Attorneys' Fees and Costs in the amount of $927,500 to Class Counsel; Costs of Claims Administration and Notice in the amount of $1,137,000 to be distributed to KCC, the claims administrator; and the proposed Enhancement Payment of $5,000 each to Representatives Plaintiff James Horosny and Jennifer Price.

Dated:  May 3, 2017

Respectfully submitted,
DOUGLAS CAIAFA, A PROF. LAW CORP.


By: /s/ *Douglas Caiafa*
Douglas Caiafa
Attorneys for Plaintiffs

-19-

MOTION FOR ATTORNEYS' FEES AND COSTS